KAUTZ, Justice.
[¶1] A jury found Darrell Wayne Young guilty of two counts of first degree sexual abuse of a minor and three counts of second degree sexual abuse of a minor. The district court ordered him to serve five consecutive sentences of life in prison without the possibility of parole because he had previously been convicted of a similar offense. On appeal, Mr. Young asserts the district court erred by determining the minor victim, FH, was competent to testify.
[¶2] We affirm.
ISSUE
[¶3] Mr. Young presents a single issue on appeal, which we rephrase:
Did the district court err in finding FH competent to testify as a witness at Mr. Young's trial?
The State presents the same issue, although phrased in greater detail.
FACTS
[¶4] Eight-year-old FH and her family lived in Rozet, Wyoming, and FH went to elementary school there. Mr. Young lived with FH's maternal grandmother in Gillette, Wyoming. During the winter of 2014-15 and spring of 2015, FH and her brother often spent the night with their grandmother and Mr. Young.
[¶5] In April 2015, FH reported to her teachers she had been sexually abused by Mr. Young. FH said that, on two occasions the previous winter, Mr. Young awoke her in the living room where she had been sleeping, undressed her, took her to a bathroom, and licked her breast area and genitals. FH also reported that Mr. Young made her kiss his penis while they were working on a "monster truck" in a carport located near Mr. Young's house.
[¶6] The State charged Mr. Young with two counts of first degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-314 (LexisNexis 2017), and three counts of second degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-315 (LexisNexis 2017). Because *226 Mr. Young had previously been convicted of a similar crime, the State asserted the penalties for his crimes should be enhanced under Wyo. Stat. Ann. § 6-2-306(e) (LexisNexis 2017) to life in prison without the possibility of parole. Mr. Young pleaded not guilty to all counts.
[¶7] Prior to trial, the defense requested a hearing on FH's competence as a witness. The district court held a hearing, where it asked FH about various topics, including general questions about her memory of the abuse. After FH stated that she did not remember the abuse, the district judge took a break and expressed concern to counsel about FH's memory. When the hearing recommenced, the judge questioned her about movies and other events that would have happened around the same time as the charged events and she was able to recall them. The district court found her competent to testify.
[¶8] The district court held a three-day jury trial beginning February 27, 2017. FH testified at the trial, describing the abuse in detail, and the jury returned guilty verdicts on all charges. Mr. Young stipulated that he had previously been convicted of a similar crime, so the penalties for his convictions in this case were enhanced. The district court ordered him to serve five consecutive sentences of life in prison without the possibility of parole. Mr. Young timely filed a notice of appeal.
STANDARD OF REVIEW
[¶9] We believe it is worthwhile to refine our standard of review for determinations of child witness competency. This Court has repeatedly stated that a district court's competency determination will not be disturbed unless it is shown to be clearly erroneous. See, e.g. , Griggs v. State, 2016 WY 16, ¶ 11, 367 P.3d 1108, 1119 (Wyo. 2016) ; Mersereau v. State, 2012 WY 125, ¶ 5, 286 P.3d 97, 103 (Wyo. 2012) ; English v. State, 982 P.2d 139, 145 (Wyo. 1999). However, we have also emphasized that the district court "has broad discretion in determining whether a witness is competent to testify," indicating that the abuse of discretion standard of review is appropriate. Gruwell v. State, 2011 WY 67, ¶ 18, 254 P.3d 223, 229 (Wyo. 2011).
[¶10] Our standard of review for determinations of child witness competency originated in the seminal case on the issue- Larsen v. State, 686 P.2d 583 (Wyo. 1984). Although in Larsen the district court's determination that the minor was a competent witness was reviewed for plain error, we referenced both the clearly erroneous and the abuse of discretion standards of review. We said:
[I]t is the duty of the court to examine a child to determine competency and ... this question is left almost entirely to the sound discretion of the trial judge. Burt v. Burt, 48 Wyo. 19, 41 P.2d 524 (1935). The United States Supreme Court held in Wheeler v. United States, 159 U.S. 523, 16 S.Ct. 93, 40 L.Ed. 244 (1895) :
"That the boy was not by reason of his youth, as a matter law, absolutely disqualified as a witness is clear. While no one would think of calling as a witness an infant only two or three years old, there is no precise age which determines the question of competency. This depends upon the capacity and intelligence of the child, his appreciation of the difference between truth and falsehood, as well as of his duty to tell the former. The decision of this question rests primarily with the trial judge, who sees the proposed witness, notices his manner, his apparent possession or lack of intelligence, and may resort to any examination which will tend to disclose his capacity and intelligence, as well as his understanding of the obligations of an oath. As many of these matters cannot be photographed into the record, the decision of the trial judge will not be disturbed on review, unless from that which is preserved it is clear that it was erroneous. " 16 S.Ct. at 93.
Id. at 585 (emphasis added). The Larsen court concluded, however, that it could not "find an abuse o[f] discretion in allowing this child to testify nor [did it] find a plain and unequivocal violation of a rule of law." Id. at 586.
[¶11] A case upon which Larsen relied, Burt , also referred to both the clearly erroneous *227 and abuse of discretion standards of review, but ultimately concluded it would be improper to "interfere with the discretion of the trial judge." Burt, 41 P.2d at 525-26. Thus, it appears this Court actually applied the abuse of discretion standard of review in Larsen and Burt . However, over the years, Larsen has been interpreted as having adopted the clearly erroneous standard for reviewing the district court's ultimate determination on competency. See Baum v. State, 745 P.2d 877, 879-80 (Wyo. 1987) ; English, 982 P.2d at 145 ; Mersereau, ¶ 5, 286 P.3d at 103 ; Griggs , ¶ 11, 367 P.3d at 1119.
[¶12] The clearly erroneous and abuse of discretion standards of review have much in common, in that they are both deferential to the district court. See, e.g. , Lovato v. State, 2010 WY 38, ¶ 11, 228 P.3d 55, 57 (Wyo. 2010) (clearly erroneous); Garland v. State, 2017 WY 102, ¶ 24, 401 P.3d 480, 487 (Wyo. 2017) (abuse of discretion). Typically, though, the clearly erroneous standard is used to evaluate a district court's findings of fact, while another standard is used to determine whether the district court's decision was legally correct. For example, in reviewing a district court's ruling on a motion to suppress evidence allegedly obtained through an improper search and/or seizure, we apply the clearly erroneous standard to the district court's findings of fact and the de novo standard to its ruling on the underlying legal issue of whether the defendant's constitutional rights were violated. See, e.g. , Kennison v. State, 2018 WY 46, ¶ 11, 417 P.3d 146, 147 (Wyo. 2018) ; Jennings v. State, 2016 WY 69, ¶ 8, 375 P.3d 788, 790 (Wyo. 2016).
[¶13] On the other hand, the abuse of discretion standard is generally used to review claims that the district court erred in admitting evidence when a proper objection was made at trial. See, e.g., Garrison v. State, 2018 WY 9, ¶ 19, 409 P.3d 1209, 1215 (Wyo. 2018). A review of cases from other jurisdictions reveals the abuse of discretion standard is commonly used to review a lower court's determination that a child witness was competent to testify. See, e.g. , Commonwealth v. Delbridge, 578 Pa. 641, 855 A.2d 27, 34, n.8 (2003) ; Baldit v. State, 522 S.W.3d 753, 761 (Tex. Ct. App. 2017) ; Davis v. State, 24 Ark. App. 152, 751 S.W.2d 11, 13 (1988) ; State v. Williams, 2018 WL 1217361, *2 (Ohio Ct. App. Mar. 8, 2018) ; State v. Spaniol, 895 N.W.2d 329, 337 (S.D. 2017) ; Marn v. People, 175 Colo. 242, 486 P.2d 424, 426 (1971) (en banc); Ortiz v. Commonwealth, 276 Va. 705, 667 S.E.2d 751, 756 (2008).
[¶14] While the clearly erroneous standard of review is the correct standard for reviewing a district court's underlying factual findings,[1] the abuse of discretion standard is appropriate for reviewing the district court's final determination of competence and, thus, the admissibility of the child's testimony. Mr. Young does not claim the district court made a factual error regarding FH's testimony at the competency hearing; instead, he claims the district court did not properly apply the Larsen test to the facts. Consequently, we will apply the abuse of discretion standard to review the district court's determination that FH was competent to testify. In doing so, we "consider the reasonableness of the district court's ruling." Triplett v. State, 2017 WY 148, ¶ 23, 406 P.3d 1257, 1262 (Wyo. 2017). " 'Determining whether the trial court abused its discretion involves consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary and capricious manner.' " Id. , (quoting Lancaster v. State, 2002 WY 45, ¶ 11, 43 P.3d 80, 87 (Wyo. 2002) ). Specifically, with regard to child witness competency determinations,
"[w]e do not presume to place ourselves in the shoes of the trial court in these cases by reading a cold record. The trial court sees the witness' facial expressions, hears inflections in her voice and watches her mannerisms during examination. These observations *228 are a vital part of the ultimate ruling on competency."
Gruwell, ¶ 25, 254 P.3d at 231 (quoting Seward v. State, 2003 WY 116, ¶ 32, 76 P.3d 805, 819 (Wyo. 2003) ).
DISCUSSION
[¶15] W.R.E. 601 provides that "[e]very person is competent to be a witness except as otherwise provided in these rules." See also, Larsen, 686 P.2d at 585 (citing 3 Louisell and Mueller, Federal Evidence § 250 (1979) ) ("few persons are inherently incapable of testifying in some manner which is potentially useful"). In general, a witness is competent to testify if she can " 'understand, receive, remember and narrate impressions and is sensible to the obligations of the oath taken before testifying.' " Mersereau, ¶ 6, 286 P.3d at 104 (quoting Simmers v. State, 943 P.2d 1189, 1199 (Wyo. 1997) ). It is a witness's intelligence, not her age, that determines whether she is competent to testify, and the child's statements need not be perfect for her to be considered competent. Id. ; Trujillo v. State, 880 P.2d 575, 579 (Wyo. 1994) (the district court did not err in finding the child competent to testify even though some of his answers were nonsensical). We do not single out isolated statements, but look at the child's entire testimony in determining whether the district court properly ruled she could testify. See id. ; Griggs, ¶ 23, 367 P.3d at 1121. See also , Punches v. State, 944 P.2d 1131, 1136 (Wyo. 1997).
[¶16] Wyoming uses a five-part test adopted in Larsen, 686 P.2d at 585, to determine a child witness's competence to testify. The district court must determine whether the child has:
"(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which [she] is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words [her] memory of the occurrence; and (5) the capacity to understand simple questions about it."
Id. (citations omitted).
[¶17] Focusing on the third Larsen factor, Mr. Young claims the record does not support the district court's determination that FH had a memory sufficient to retain an independent recollection of the occurrence. The district court specifically found that FH's testimony at the competency hearing demonstrated she had a sufficient memory of the time-period, but was generally reluctant to talk about the abuse. It also indicated that there is a difference between competence and credibility, and the jury, not the court, was charged with determining whether she was a credible witness.
[¶18] In support of his claim that FH did not have a sufficient memory, Mr. Young directs this Court to three exchanges between the district judge and FH:
1) THE COURT: ... Can you remember things that happened two years ago?
FH: No, not really.
...
THE COURT: If something important happened in your life a couple years ago, would you remember it-
FH: No.
THE COURT: -and be able to tell us about it?
FH: No.
...
2) THE COURT: Okay. And I won't have you talk about [the sexual abuse] today, but let me ask you this. I know you're scared to talk about it and you don't want to talk about it, but can you actually remember it?
FH: No.
THE COURT: You don't even remember what happened?
FH: Nuh-uh.
...
3) THE COURT: Now, the thing that happened that you're uncomfortable talking about, and I don't want to ask you about it, other than in your own mind, do you remember what happened?
FH: No. Not really.
*229 [¶19] Mr. Young claims FH's direct testimony that she could not remember the abuse rendered her incompetent to testify. However, the Larsen test "focuses on the mental abilities of the witness rather than the witness's recollection of specific events." Gruwell, ¶ 21, 254 P.3d at 230. Many witnesses (both children and adults) do not remember certain events or facts. The inability to remember specific matters does not mean a witness is not competent to testify, although it may affect her credibility as a witness. As the district court in this case recognized, competence is not the same as credibility. See, e.g. , Griggs, ¶¶ 22-24, 367 P.3d at 1121 (child witness competent to testify even though she said she "forget[s] sometimes"); Sisneros v. State, 2005 WY 139, ¶ 37, 121 P.3d 790, 802 (Wyo. 2005).
[¶20] Furthermore, Mr. Young's argument ignores the remainder of FH's testimony at the competency hearing. When viewed in its entirety, FH's testimony established she had the mental ability to remember, and likely did remember, the abuse.[2] The first exchange between the district court and FH involved very vague questions about whether she could remember things that happened two years before. We daresay any person asked a general question about whether he or she could remember things that happened two years ago may give a negative, or at the least equivocal, answer. When asked more specifically whether she understood what she would be testifying about in court, she responded that she did.
THE COURT: ... But you have an idea of what the questions are going to be that are going to be asked of you?
FH: Not the questions.
THE COURT: Not the questions, but you know the topic?
FH: Yeah.
THE COURT: Okay. So that topic, supposedly that happened a couple of years ago?
FH: Yeah.
This exchange indicated that FH knew the subject matter that she was supposed to testify about and recalled that it happened "a couple of years ago."
[¶21] The second exchange, when viewed in context, showed FH was simply reticent to discuss the abuse:
THE COURT: ... So when you're asked questions in the trial, you're not going to be able to answer them?
FH: No.
THE COURT: How come?
FH: Because I'm probably going to be scared.
THE COURT: Well, yeah, I can understand you being scared; I'm more concerned about whether you can even remember.
FH: I don't want to talk about it.
...
THE COURT: Okay. And I won't have you talk about it today, but let me ask you this. I know you're scared to talk about it and you don't want to talk about it, but can you actually remember it?
FH: No.
THE COURT: You don't even remember what happened?
FH: Nuh-uh.
...
THE COURT: ... So I want to get back to what supposedly happened a couple years ago, that's what we're going to be talking about here in court in a couple of weeks; do you understand that?
FH: Yeah.
THE COURT: So you told me you don't want to talk about it?
FH: (Nods head.)
THE COURT: ... And you're a little scared; is that right?
FH: Yes.
THE COURT: But your position is that you can't even remember what happened? Or is it mainly you remember, but you don't want to talk about it?
FH: I remember, but I don't want to talk about it.
FH's statements that she did not remember the abuse actually show the opposite. Had she truly not remembered, she would not *230 have stated she was scared to talk about it. Additionally, as the colloquy continued, FH stated she remembered the abuse but did not want to discuss it. Anyone with experience with children knows "not remembering" is a common tactic they use to avoid talking about unpleasant or uncomfortable matters.
[¶22] The final exchange offered by Mr. Young as showing FH did not have a sufficient memory to testify is:
THE COURT: ... Now, the thing that happened that you're uncomfortable talking about, and I don't want to ask you about it, other than in your own mind, do you remember what happened?
FH: No. Not really.
Right after this exchange, the district judge had FH leave the courtroom so he could consult with the attorneys. When FH returned, the judge switched tactics and, instead of asking her about the abuse, he asked her about movies she had seen a couple of years ago. On that topic, she was very forthcoming and demonstrated she could remember events from that time-frame in great detail. The court then returned to asking about her memory of the events in question:
THE COURT: ... I got the sense that maybe you might remember, but you didn't really want to talk about it.
FH: Yeah.
THE COURT: Is that a fair statement?
FH: Yeah.
THE COURT: It's not a question of you not remembering it-
FH: Yeah.
THE COURT: -it's just that you don't feel comfortable talking about it?
FH: It's kind of both.
THE COURT: A little of both, okay. And of course, it's kind of hard to remember things that happened a couple of years ago.
FH: Yeah.
THE COURT: But I take it you feel pretty strongly that you don't feel comfortable talking about it?
FH: Yeah.
...
THE COURT: ... So as we finish up, then tell me if I'm wrong-
FH: Okay.
THE COURT: -when we're talking about things that might have happened at [Mr. Young's] house a couple years ago-
FH: Yeah.
THE COURT: -you remember that time period?
FH: Yeah.
THE COURT: And you may not remember everything-
FH: Yeah.
THE COURT: -about it, but you have a memory about it?
FH: Yeah.
[¶23] Other parts of FH's testimony at the hearing demonstrate she could remember events from the relevant time-period. The abuse happened two years before the competency hearing, when FH was in the second grade at Rozet Elementary. The district court asked her about the gifts she received for Christmas two years before, and she said she had gotten boots from her mother, which she described in detail. Although she could not remember her second grade classroom teacher's name, she recalled her friends' names and that she had gotten to go "glow bowling" as a reward for good attendance.
[¶24] Considering the entirety of FH's testimony at the competency hearing, we conclude the district court acted reasonably and did not abuse its discretion by finding FH competent to testify. It conducted the required analysis under Larsen , and the record supports the district court's conclusion that FH had a sufficient memory to testify.
[¶25] Affirmed.

Appellant has not challenged any factual finding of the district court, so we have not discussed a standard of review for challenged factual findings in a competency hearing. Our precedent has not addressed that specific standard of review. However, when factual findings are appealed in other situations, such as when a motion to suppress is denied, we presume the district court's factual findings to be correct, view them in the light most favorable to the district court, and do not disturb them unless they are clearly erroneous. Maestas v. State, 2018 WY 47, ¶ 7, 416 P.3d 777, 780 (Wyo. 2018) ; Harris v. State, 2018 WY 14, ¶ 13, 409 P.3d 1251, 1253 (Wyo. 2018).

FH testified about each alleged incidence of abuse at trial.